**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ADT SECURITY SERVICES, INC.,**<br><br>    Plaintiff,<br><br>    vs.<br><br>**SECURITY ONE INT'L, INC.** *et al.*,<br><br>    Defendants. | **Case No.: 11-CV-05149 YGR**<br><br>**ORDER DENYING MOTION OF DEFENDANT CLAUDIO HAND TO DISMISS SECOND AMENDED COMPLAINT** |

Plaintiff ADT Security Services, Inc. ("ADT") brings this unfair competition action against Defendants Security One International, Inc. ("Security One"); its sole officer, director, and shareholder, Claudio Hand ("Hand"); Scellusaleads; and the owner and operator of Sceullusaleads, Pure Clar ("Clar"), alleging a campaign of fraud and deceit to steal ADT's customers. In its Second Amended Complaint (Dkt. No. 79 ("SAC")), ADT alleges three claims against Claudio Hand: (1) Unfair Competition and False Advertising under the Lanham Act; (2) Vicarious Unfair Competition and False Advertising under the Lanham Act; (3) Contributory Unfair Competition and False Advertising under the Lanham Act.

Hand has filed a Motion to Dismiss on the grounds that ADT fails to allege fraud with particularity. The Court requested supplemental authorities from the parties and heard oral argument on July 24, 2012.

Having carefully considered the papers submitted, the pleadings in this action, and the argument of counsel, for the reasons set forth below, the Court hereby **DENIES** the Motion to Dismiss.

## I. BACKGROUND

This is an action for unfair competition between providers of home alarm and security services. (SAC ¶¶ 10-16.) ADT alleges that Security One has targeted ADT and its customers in a widespread and systematic campaign of fraud and deceit in order to steal ADT's customers. (*See generally*, *id.* ¶¶ 40-117.) Members of the Security One sales force allegedly made various misrepresentations to trick ADT customers into abandoning ADT and signing up with Security One. (*Id.*) According to the SAC, representatives from Security One would go to the homes of ADT customers and falsely tell them that Security One was affiliated with ADT, and that Security One would be taking over ADT's customer accounts. (*Id.* ¶¶ 29, 41, 62, 73, 73, 92, 130, 141.) Some ADT customers believed Security One's false representations and switched their security monitoring services. (*Id.* ¶¶ 17, 42, 64-65, 96, 129-30, 141.)

Representatives of Security One also telephoned ADT customers to get them to switch their security monitoring services to Security One. Defendant Scellusaleads is a telemarketing company based in the Philippines that allegedly generates sales leads for Security One. (*Id.* ¶¶ 3, 121.) ADT alleges that on a weekly basis, Security One hires a varying number of Scellusaleads' agents to make sales calls to prospective customers in the United States, including customers currently with ADT. (*Id.* ¶ 124.) Scellusaleads' agents making these calls falsely represent that Security One and ADT are affiliated. (*Id.* ¶¶ 60, 130.) ADT customers believe this and sign on to Security One, believing that they are still going to receive ADT services. (*Id.* ¶¶ 129-131.) Scellusaleads' sales representatives then call ADT posing as ADT customers and cancel the customers' ADT accounts without the customers' knowledge or consent. (*See id.* ¶¶ 47-61.)

The SAC alleges that the entire scheme was overseen by Claudio Hand and seeks to hold him liable for unfair competition and false advertising under the Lanham Act directly (Count I); vicariously (Count II); and contributorily (Count III). (*Id.* ¶¶ 159-95.) The SAC does not identify any specific acts by Claudio Hand, but instead seeks to hold him accountable based on his role as the sole officer, director, and shareholder of Security One, who allegedly is intimately involved in all aspects of its management, including its campaign of fraud and deceit. (*Id.*) Hand argues that

ADT failed to plead its Lanham Act claims against him with particularity, and also that the Lanham Act does not provide a cause of action for contributory unfair competition and false advertising.[1]

## II. DISCUSSION

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To state the circumstances of the fraud with particularity, the plaintiff plead "the who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

### A. VICARIOUS LIABILITY

Under the Lanham Act, "a corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999).[2]

Hand argues that the SAC fails to allege his role in the fraud with particularity. Hand relies on *Openwave Sys. Inc. v. Fuld*, Case No. C-08-05683, Dkt. No. 78 (N.D. Cal. Jun. 6, 2009), where Judge Ilston found that "[t]he complaint comes close to meeting Rule 9(b) in that it identifies each

---

[1] The Court previously denied the part of Hand's motion to dismiss as to Count I on the basis that the motion is a successive Rule 12 motion. (*See* Dkt. No. 102.)

[2] In order for there to be secondary liability under the Lanham Act, there must be a direct violation. The elements for a direct violation of the Lanham Act for false advertising under the Lanham Act 15 U.S.C. § 1125(a) are:

> (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (4) the deception is material, in that it is likely to influence the purchasing decision; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

*Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir.2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n. 4 (9th Cir. 2002)).

defendant's position" within the company, but only alleged generally that each defendant "possess[es] the power and authority to control" the fraudulent conduct. The pleading problem in *Openwave* was that the complaint stopped short of alleging that the individual defendants actually directed, authorized, or participated in the fraud. Here, Hand's alleged role in the fraud is clearly alleged: he oversaw and directed it.[3]

ADT alleges that Hand either directs his six employees to engage in the fraud or Hand remains willfully blind to the conduct of his six employees.[4] The SAC is very detailed as to the particular misconduct in which Security One is alleged to have engaged. Taking into account that Hand is the only director, officer, owner, and shareholder of Security One, a company that has six employees, alleging that Hand was intimately involved with the fraudulent scheme is plausible.

ADT also provides facts to show that Hand has "the right and ability to control the unlawful conduct of the employees, agents, independent contractors and third-party vendors that are making misrepresentations, including Scellusaleads." (SAC ¶ 170.) Hand has travelled to the Philippines to meet with Clar to discuss the telemarketing services that Scellusaleads provides to Security One. (*Id.* ¶ 128.) The allegations support an inference that Hand had the means of controlling or monitoring Scellusaleads but allowed the unlawful behavior to continue unabated because Hand directly benefits financially from Scellusaleads' unlawful acts. Based upon the facts alleged, the core purpose of Rule 9(b) is served–"to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *See Vess*, *supra*, 317 F.3d at 1106.

Accordingly, the Court **DENIES** Hand's Motion to Dismiss as to Count II.

\\

\\

---

[3] Hand argues that ADT must allege agency with particularity, but provides no on point legal authority to support this assertion.

[4] Hand argues that under Rule 9(b), "willful blindness" must be pled with particularity. This argument runs counter to the text of Rule 9(b), which provides that state of mind may be alleged generally. *See* Fed. R. Civ. P. 9(b) ("conditions of a person's mind may be alleged generally.").

4

### B.     CONTRIBUTORY LIABILITY UNDER THE LANHAM ACT

Contributory liability under the Lanham Act is based on the theory that one who intentionally induces another to directly violate the Lanham Act is contributorily liable. *See Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (discussing contributory trademark infringement under Lanham Act). Pleading a cause of action for a contributory violation of the Lanham Act requires allegations that the defendant: (1) intentionally induced the primary Lanham Act violation; or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Id*.

The parties dispute whether there is a cause of action for contributory false advertising and unfair contribution under the Lanham Act. Although the Ninth Circuit Court of Appeals has not decided the issue, ADT has provided on point circuit court and district court authority from other circuits that acknowledge claims for contributory unfair competition and contributory false advertising under the Lanham Act. ADT argues that the Ninth Circuit recognizes contributory trademark infringement and "[i]t is likely that the Ninth Circuit would acknowledge claims for Contributory Unfair Competition and False Advertising under the Lanham Act, as [these] other courts have." (Opp'n 21.) Defendant, on the other hand, quotes the text of the Lanham Act and points out that the Lanham Act does not expressly provide for contributory liability. (Mot. 10-11 ("Nowhere in the above text is there mention of contributory liability").)[5]

Contributory liability for violations of the Lanham Act is well-established. *See*, *e.g.*, *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853 (1982) ("As the lower courts correctly discerned, liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another"). In light of other courts' reasoned extension of a claim for contributory false advertising and unfair contribution under the Lanham Act, the Court similarly finds such an extension to be appropriate.

Accordingly, the Court **DENIES** Hand's Motion to Dismiss as to Count III.

---

[5] In a footnote, Hand argues that the Ninth Circuit cases that recognize contributory violations of the Lanham Act are infringement cases, "which are irrelevant because ADT has not alleged trademark infringement." (Mot. 11, n.8.) Considering that the text of the Lanham Act does not expressly provide for contributory trademark infringement, Hand's distinction is not helpful.

5

### III. CONCLUSION

For the reasons set forth above, Claudio Hand's Motion to Dismiss is **DENIED**.

Claudio Hand shall file an Answer to the Second Amended Complaint within fourteen (14) days of the date of this Order.

This Order terminates Docket Number 82.

**IT IS SO ORDERED**.

Date: September 14, 2012

                                        **YVONNE GONZALEZ ROGERS**
                                        **UNITED STATES DISTRICT COURT JUDGE**