UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADT SECURITY SERVICES,** | Case No.: 11-CV-5149 YGR |
| **Plaintiff,** | **PRETRIAL ORDER NO. 2 RE: DEFENDANTS' MOTION *IN LIMINE* NO. 1** |
| v. | |
| **SECURITY ONE INTERNATIONAL, INC.,** *et al.*, | |
| **Defendants.** | |

## I.   INTRODUCTION

Defendants Security One International, Inc., and Claudio Hand (collectively, "Defendants") have filed nine motions *in limine*. Dkt. Nos. 235-43. This Order pertains to their first motion, which seeks to exclude from the evidence admitted at trial alleged hearsay contained in five exhibits produced by Plaintiff ADT Security Services:

1) a spreadsheet created by ADT that both parties call the "Form Letter Report," which purports to summarize records of phone calls ADT made to former customers who cancelled their ADT service via a purported form letter;
2) recordings ADT made of those phone calls ("Recordings");
3) notes that ADT representatives made during those phone calls ("ADT Notes");
4) complaints lodged with the Better Business Bureau; and
5) affidavits from various consumers.

Dkt. No. 235 ("Mot."). Only the first three exhibits—the Form Letter Report, the Recordings, and the ADT Notes—remain at issue.[1]

The essence of Defendants' motion is that the exhibits must be excluded as "multiple hearsay" because they relate, sometimes in summaries prepared by ADT representatives, statements by former ADT customers relating what Defendants' telemarketers allegedly said. In opposition, ADT argues that the exhibits are not hearsay because they are not being offered for their truth but to show "confusion" on the part of ADT's former customers.[2] More specifically, ADT contends that the statements in the Form Letter Report and ADT Notes either are not hearsay or are admissible under a hearsay exception, and that the Recordings are admissible as business records or under the "catchall exception" of Federal Rule of Evidence 807.

Based upon the parties' briefings, oral argument during the pretrial conference on September 3, 2013, and for the reasons set forth below, the Court agrees with ADT to the extent that, under Federal Rule of Evidence 807, the Recordings are admissible to show confusion. The Form Letter Report and the ADT Notes are inadmissible. However, the Form Letter Report may be modified to create an index of the Recordings. In addition, this order does not purport to limit the testimony of the ADT employees who had the conversations with the customers, again for the limited purpose of showing confusion, as is allowed under Ninth Circuit authority discussed *infra* in Section III.B.

**II.     BACKGROUND**

The Form Letter Report is a three-inch thick printout of a spreadsheet that purports to log phone calls placed by ADT's Customer Loyalty team to former ADT customers who had sent ADT form letters cancelling their respective ADT services. ADT's Director of Customer Loyalty, Stephanie Gaccetta, declares that ADT normally receives cancellations by phone, at which point

---

[1] The customer affidavits and Better Business Bureau complaints are no longer at issue because ADT, in its opposition to the motion *in limine*, represented that it intends to use customer affidavits only to refresh witness recollection and that it does not intend to introduce Better Business Bureau complaints. Dkt. No. 264 ("Opp'n") at 1 n.1.

[2] ADT's claims include a Lanham Act claim for unfair competition. One element of such claims is that Defendants made statements that were likely to confuse. *See* 15 U.S.C. § 1125(a)(1)(A).

2

her Customer Loyalty department queries the customer why they are leaving ADT and inputs the reasons into a database. Dkt. No. 264-2 ("Gaccetta Decl.") ¶ 5. Gaccetta declares that in June 2012 ADT noticed a "spike" in the number of cancellations received by letter, that the letters were form letters, and that they were a "new type[] of cancellation[] that we had not before seen, or [had] rarely seen." *Id.* ¶ 6-7. ADT admits that these cancellations "required a modification of our ordinary customer procedure." *Id.* Gaccetta declares that she decided to have ADT call the senders of those letters to ask them "the same questions" as to why they cancelled. *Id.* She states that the calls were made to "confirm that the customers intended to cancel," as well as "to identify the reasons for which they decided to cancel, pursuant to the Customer Loyalty mission." *Id.* Gaccetta represents that each of the calls was recorded. *Id.*

The Court understands the Form Letter Report to have been compiled thus: ADT identified former customers who had cancelled their accounts via form letter. *See id.* ¶ 6. Then, ADT representatives, whom Gaccetta's declaration does not identify by name, attempted to reach these customers by telephone. *Id.* When an ADT representative reached a former customer, the representative asked the customer their reasons for leaving ADT. *Id.* The ADT representative "took notes regarding each call on a copy of the customer's form letter." *Id.* These notes appear to be the ADT Notes produced as potential trial exhibits. The Customer Loyalty department apparently then received the notes through means not identified in Gaccetta's declaration and "updated" the Form Letter Report with their contents, summarized and perhaps otherwise altered, on a "daily" basis. *See id.*[3]

The Court has examined the complete Form Letter Report in chambers. In printed form, the spreadsheet is several hundred pages long. Each row of the spreadsheet evidently represents a customer contact. Columns in the spreadsheet contain the customer's account number and name; the name of ADT's competitor; and notations of the date the customer's letter of cancellation was

---

[3] ADT's account of how its employees' notes ultimately became the Form Letter Report does not provide particulars that may have been helpful in evaluating whether the latter document was compiled using the kind of regular method that indicates the reliability of an admissible business record. *See* Gaccetta Decl. ¶ 6. This vagueness by the Form Letter Report's proponent supplies another reason to deem the document inadmissible.

3

signed, whether the letter was signed by the customer, the price the customer paid for new service, and whether ADT had raised the customer's rates in the last six months. Other columns are particularly important to the instant motion *in limine*. First, the spreadsheet contains a column summarizing customers' stated reasons for cancelling their ADT service. Second, the spreadsheet has a column with the header "Dishonest Practice?" and notations stating for each customer either "Yes" or "No."

## III. DISCUSSION

### A. FORM LETTER REPORT

The ultimate issue with respect to the Form Letter Report is whether the multiple layers of out-of-court statements represented therein may be admitted under relevant hearsay rules. "Out of court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." *United States v. Lopez-Alvarez*, 970 F.2d 583, 587 (9th Cir. 1992) (quoting *Anderson v. United States,* 417 U.S. 211, 219 (1974)); *see also* Fed. R. Evid. 801(c). "Hearsay included within hearsay, or 'multiple hearsay,' is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rules." *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990); *see also* Fed. R. Evid. 805.

Here, the Form Letter Report contains four distinct layers of out-of-court statements: (1) the statements made by Defendants' telemarketers to ADT's former customers, (2) the former customers' later statements to ADT representatives calling to see why the customers cancelled, (3) the ADT representatives' notes summarizing the former customer's statements, and (4) the final Form Letter Report summarizing the notes. *Cf. Sana v. Hawaiian Cruises, Ltd.,* 181 F.3d 1041, 1045 (9th Cir. 1999) (identifying three layers in a report that was itself an unsworn out-of-court statement, relating another such statement which, in turn, related another such statement).[4]

ADT argues that each layer (i) is not hearsay because ADT offers it to show its effect on ADT customers, as opposed to its truth, (ii) is not hearsay because it is a party admission, or (iii) falls within a hearsay exception. The Court need not belabor its analysis by proceeding stepwise

---

[4] Both parties identify only three layers by failing to account for the Form Letter Report itself being an unsworn, out-of-court statement.

4

from the first statement to the last because, even assuming that the hearsay "chain" holds from the first to the third "links," it breaks at the fourth, that is, where the ADT representatives' notes are summarized in the final Form Letter Report.

ADT argues that the ADT representatives' statements included within the Form Letter Report are admissible business records under Federal Rule of Evidence 803(6). The Court disagrees for three reasons. First, Rule 803(6) requires that "making the record was a regular practice of" the business. Fed. R. Evid. 803(6)(C). ADT admits that making the Form Letter Report was "a modification of [its] ordinary customer procedure." Gaccetta Decl. ¶ 6.

Second, "[e]xpressions of opinion or conclusions in a business record are admissible only if the subject matter calls for an expert or professional opinion and is given by one with the required competence." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981). The Form Letter Report expresses a conclusion as to whether a "Dishonest Practice" occurred, in the column with that heading. That subject matter, however, does not call for expert opinion, nor have the unidentified persons making an evaluation as to dishonesty been qualified as experts.

Third, Rule 803(6) requires that "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Here, three indicia of untrustworthiness are apparent. First, the timing of the ADT representatives' phone calls and the subsequent creation of the Form Letter Report are consistent with the creation of a record for litigation. ADT's own declarant establishes that the phone calls were made no earlier than June 2012, well after the commencement of this litigation. Gaccetta Decl. ¶ 6. The timing alone might not be enough to support an inference that the Form Letter Report was prepared for litigation purposes. *See, e.g., U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1044 (9th Cir. 2009) (finding "no merit" to argument that computer-generated summaries printed for purposes of litigation were untrustworthy when summaries merely extracted information from a database maintained in normal course of business). However, second, the Form Letter Report itself reflects that it was prepared for litigation purposes. The column captioned "Dishonest Practice?" makes plain that one objective of the Form Letter Report is to identify instances of what ADT believes to be dishonest business practices by ADT's competitors—the very subject of this lawsuit.

5

"[T]he absence of trustworthiness is clear . . . when a report is prepared in the anticipation of litigation because the document is not for the systematic conduct and operations of the enterprise but for the primary purpose of litigating." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000); *see also AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1045 (7th Cir. 1990) ("Summaries of records prepared for litigation are indeed inadmissible.") (citing *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259-60 (9th Cir. 1984)). Third, Defendants have demonstrated that there is a disparity between at least some of the summaries of customer calls contained in the Form Letter Report and sworn deposition testimony given by those same customers. *See* Mot. at 2 n.2, Exs. A & B.

For the foregoing reasons, the Court rules that the Form Letter Report is **INADMISSIBLE**.

### B.   ADT NOTES

With respect to the notes made by the ADT representatives of their calls with former ADT customers, the ultimate issue is whether the customers themselves were acting under some business duty to provide accurate information to the callers from ADT. "Rule 803(6) does not cover records based on information obtained from an outsider" because such persons have "no business duty to report accurate information to the record preparer and the record therefore 'does not have the presumption of accuracy that statements made during the regular course of business have.'" RUTTER GROUP PRAC. GUIDE FED. CIV. TRIALS & EV. Ch. 8G-E ("RUTTER"), § 8:2691 (quoting *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991)); *see also Clark*, 650 F.2d at 1037 ("[H]earsay statements are admissible only if the observer or participant in furnishing the information to be recorded was "acting routinely, under a duty of accuracy, with employer reliance on the result, or in short 'in the regular course of business.'").

Here, ADT's former customers bore no duty to ADT to report with accuracy either their own state of mind or their previous conversations with Defendants' telemarketers. Accordingly, their statements cannot form part of a business record unless ADT's "standard practice was to *verify* the information provided" by the customers or their information is "admissible under *some other hearsay exception.*" RUTTER, § 8:2691 (emphases in original). The record does not reflect any practice of verification; on the contrary, it reflects that ADT had no preexisting standard

1  practices concerning the types of calls to former customers made by ADT, because the
2  cancellations prompting the calls were, at most, "rarely seen" and handling those cancellations
3  required ADT's Customer Loyalty team to modify its usual business practices. Gaccetta Decl. ¶¶
4  6-7. As to other hearsay exceptions, the Court sees none that are applicable.

5  ADT contends that the customer statements are admissible to show the customers' then-
6  extant state of "confusion." Opp'n at 2-3. ADT cites *Oracle*, a case from this District, for the
7  proposition that whenever "a statement supports an inference about the declarant's state of mind,
8  and is not being used to prove the truth of the matter asserted, it may be admitted for that non-
9  hearsay purpose." *Id.* at 3 (citing *Oracle U.S.A. v. SAP AG*, No. C 07-1658 PJH, 2012 U.S. Dist.
10 LEXIS 107147, at *20-21 (N.D. Cal. July 31, 2012)). *Oracle*, however, stands for a far narrower
11 proposition.

12 *Oracle* relied on a Ninth Circuit case, *Lahoti*, where the panel held, in a Lanham Act case,
13 that the testimony of a plaintiff's company representatives that the company had received phone
14 calls from "confused customers" was permissible under Rule 803(3)'s state of mind exception.
15 *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011). The *Lahoti* court observed that a
16 majority of circuit courts had followed its approach, citing to a district court case, *Conversive*, that
17 surveyed the out-of-circuit authorities. *Id.* (citing *Conversive, Inc. v. Conversagent, Inc.*, 433 F.
18 Supp. 2d 1079, 1091 (C.D. Cal. 2006)). Each of the cases cited in *Conversive* where a circuit court
19 endorsed the approach evident in *Lahoti* involved a witness who *testified* to out-of-court statements
20 evincing confusion. *See Fun–Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003-
21 04 (2d Cir. 1997) ("Fun-Damental offered the direct testimony of its national sales manager" of
22 customer complaints misidentifying plaintiff); *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693
23 F.2d 1155, 1160 (5th Cir. 1982) (recounting testimony of plaintiff's employee that he frequently
24 received calls confusing plaintiff and defendant); *Citizens Financial Group, Inc. v. Citizens Nat.*
25 *Bank of Evans City*, 383 F.3d 110, 132-33 (3d Cir. 2004) (recounting testimony of plaintiff bank's
26 "tellers regarding their experiences with customers confused between the two banks"); *Lyons*
27 *Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001) (identifying
28 proffered testimony, as well as newspaper clippings, where parents, children, and others mistook

defendant's "Duffy" dinosaur costume for plaintiff's "Barney" dinosaur character ). The Court also finds it pertinent that, in all these cases, the "confusion" expressed to the plaintiff was both actual and spontaneous, i.e., the customer was caught in the act of misidentifying the plaintiff.

*Oracle*, then, does not stand for the proposition identified by ADT, namely, that any statement supporting an inference about a declarant's state of mind and offered to show that state is admissible. That proposition is far too broad. Rather, *Oracle* and the cases on whose shoulders it stands provide the far narrower principle that, in Lanham Act cases, a plaintiff's employee may testify in court, subject to cross-examination, as to the content of out-of-court statements that show actual confusion by plaintiff's customers through an act of misidentification. This principle is consistent with Rule 803(3)'s usual requirement that the "out-of-court statement must be 'nearly contemporaneous with the incident described and made with little chance for reflection;' and must be describing or referring to an event, with little opportunity for after-the-fact reflection or deliberation." *Oracle*, 2012 U.S. Dist. LEXIS 107147, at *21 (quoting *U.S. v. Orm Hieng*, 679 F.3d 1131, 1147-48 (9th Cir. 2012)).

Here, ADT proffers notes taken by employees who placed the calls to its former customers, in lieu of those employees' testimony. The Court understands that the statements in the ADT Notes do not identify spontaneous customer misidentifications, but ADT's own summaries of those discussions, which ADT initiated in the context of pending litigation. Further, the record before the Court offers no assurances that ADT's notations are not themselves the product of "after-the-fact reflection or deliberation." These facts distinguish the case at hand from situations where a customer spontaneously expresses confusion or where a live conversation is recorded.

For all these reasons, *Oracle* and *Lahoti* do not support applying Rule 803(3)'s state-of-mind exception to the notes of ADT's employees. In the absence of any applicable hearsay exception that would excuse the former ADT customers' lack of a business duty to ADT, and the absence of any indication in the record that ADT's usual practice was or could have been to verify the information received in calls of this type, the Court finds no reason to apply the business-records exception to ADT's proffered notes of its employees calls with former customers. Accordingly, the Court deems the ADT Notes **INADMISSIBLE**.

8

### C. RECORDINGS

With respect to the proffered Recordings, the ultimate issue is whether they are admissible under Rule 807.[5] That rule provides, in pertinent part:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.[6]

Here, the Court concludes that the Recordings satisfy Rule 807, assuming they are subject to proper authentication, on the basis of the following findings. *See F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir. 1993) (requiring court to make "detailed findings" when admitting hearsay under the residual exception). With respect to the first Rule 807 factor, such Recordings, once properly authenticated, have circumstantial guarantees of trustworthiness because they are contemporaneous, real-time recordings of a conversation, wherein the customer was unaware of the questions that would be asked of them and the customer had personal knowledge of the events related.

With respect to the second Rule 807 factor, the Recordings are evidence of the material fact of customer confusion.

With respect to the third Rule 807 factor, ADT persuasively argues that the Recordings of the phone calls between ADT's representatives and its former customers are ADT's "most reliable" source of evidence of customer confusion. ADT cannot present direct, contemporaneous evidence of confusion or of confusing statements by Defendants' telemarketers because the telemarketers did not record their calls. The telemarketers themselves reside in the Philippines, beyond the reach of this Court's subpoena power. As for the customers, many of them reside out of state, also beyond

---

[5] ADT also submits that the recordings are admissible as business records but, for the reasons set forth above, they are not.

[6] The Rule also contains a notice requirement, which was satisfied by ADT invoking Rule 807 in its opposition brief and the Court later holding oral argument on the instant motion *in limine*.

the reach of a subpoena, and in any event, requiring all the customers to testify personally "would not be reasonable." *Figgie*, 994 F.2d at 608-09.  As the *Figgie* court colorfully observed: "It should not be necessary to scale the highest mountains of Tibet to obtain a deposition for use in a $500 damage claim arising from an accident with a postal truck." *Id.* at 609.  Further, the Court finds that direct testimony from the customers "is not likely to be more reliable than" the recordings already made.  *See id.*  On the contrary, it may be less reliable given the time lapse between the making of the recordings and the trial date, time during which memory may be expected to fade.  Accordingly, the recordings of ADT's customers' recollections of their conversations with the telemarketers are "more probative [of the customers' response to the telemarketer] than any other evidence [ADT] can obtain through reasonable efforts."  The Recordings, assuming they are properly authenticated, are more reliable than the Form Letter Report or the ADT Notes herein deemed inadmissible because both of those documents offer a mere summary of ADT's view of each conversation with its former customer, as compared to an unmediated or "raw" recording.

Lastly, with respect to the fourth Rule 807 factor, the Court concludes that admission of the Recordings will serve the interests of justice in this case because ADT should not be unduly hindered in presenting its case by Defendants' own conduct in not recording its telemarketers discussions with prospective customers.  Admitting the recordings "furthers the federal rules' paramount goal of making relevant evidence admissible."  *Figgie*, 994 F.2d at 609.

The Court concludes that, for the foregoing reasons, the Recordings are at least as reliable as other types of hearsay statements admitted through recognized hearsay exceptions, and are more reliable than any other evidence ADT reasonably could obtain to show confusion.  Accordingly, with respect to the Recordings, Defendants' motion *in limine* is **DENIED**.  The Court deems the Recordings **ADMISSIBLE**.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion *in Limine* Number 1 as to the Form Letter Report and the ADT Notes.  Those exhibits themselves are deemed **INADMISSIBLE**.

The Court **DENIES** the Motion as to the Recordings.  The Recordings are deemed **ADMISSIBLE**.  The parties shall meet and confer and provide the Court with either joint or

individual proposals for the most effective manner in which to provide the jury with the Recordings. Said submission shall be filed by noon (Pacific Time) on Tuesday, September 10, 2013.

The Motion is **DENIED AS MOOT** with respect to the customer affidavits and Better Business Bureau complaints referenced therein.

**IT IS SO ORDERED**.

Dated: September 5, 2013

                                           **YVONNE GONZALEZ ROGERS**
                               **UNITED STATES DISTRICT COURT JUDGE**